UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER DENYING PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [28]

### I.   Introduction

Plaintiffs filed an Application for a Temporary Restraining Order ("TRO") on August 3, 2020, against numerous state officials, seeking to enjoin the enforcement of California's school reopening framework, which prohibits in-person education in counties on a statewide COVID-19 monitoring list. Dkt. 28. For the reasons articulated below, Plaintiffs' Application for a TRO is DENIED.

### II.   Factual and Procedural Background

On July 17, 2020, the California Department of Public Health (CDPH) issued its "COVID-19 and Reopening In-Person Learning Framework for K-12 Schools in California, 2020-2021 School Year" (hereafter "Framework for K-12 Schools" or "Framework"). Dkt. 36, Ex. J.1.[1] The Framework provided that "[s]chools and school districts may reopen for in-person instruction at any time if they are located in a local health jurisdiction (LHJ) that has not been on the county monitoring list within the prior 14

---

[1] Defendants request that this Court take judicial notice of numerous exhibits filed in connection with their Opposition. Dkt. 36. Plaintiffs filed a motion opposing judicial notice. Dkt. 41. To the extent Defendants seek judicial notice of the government's policies and their stated rationale, these facts are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). The Court therefore GRANTS Defendants' Request for Judicial Notice for this purpose as to each of the exhibits cited in this Order.

:

Initials of Preparer    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

days." *Id.* The Framework also set up a waiver process, which allows local health officers to grant waivers to elementary schools seeking to reopen for in-person instruction. *Id.* n.2. CDPH explained that the waiver process would be limited to elementary schools because "there appears to be lower risk of child-to-child or child-to-adult transmission in children under age 12." Dkt. 36, Ex. M.1.

Counties are added to the statewide monitoring list, and thus subject to the Framework, based on the local prevalence of COVID-19 cases and local strain on health care capacity. Dkt. 36, Ex. S. CDPH has imposed extensive restrictions on virtually all activities outside the home in counties on the monitoring list. Dkt. 36 H.2-4. CDPH explained that more aggressive measures were required for counties on the monitoring list because "the risks and impacts of disease transmission are even greater." *Id.* The monitoring list is continually updated, and the oldest data considered is a county's average daily reported cases per 100,000 over the past 14 days. Dkt. 36, Ex. S.

Plaintiffs are fourteen parents of California students and one minor. Dkt. 9, at 5-10. Some of the students attend public school, and some attend private school. *Id.* The students live and attend school in numerous counties and school districts across California. *Id.* At least four parents have children with disabilities, and the minor also has a disability. *Id.* at 36. The students range in age from kindergarten to twelfth grade. *Id.* at 5-10.

On July 21, 2020, Plaintiffs filed a Complaint against numerous state officials ("Defendants") seeking to enjoin enforcement of the Framework. Dkt. 1. Plaintiffs filed an Amended Complaint on July 29, 2020. Dkt. 9. Plaintiffs' Amended Complaint asserts that restrictions on in-person education under the Framework violate (1) Substantive Due Process, (2) the Equal Protection Clause, (3) Title VI of the Civil Rights Act of 1964, (4) the Individuals with Disabilities Education Act ("IDEA"), (5) Title II of the Americans with Disabilities Act ("ADA"), and (6) Section 504 of the Rehabilitation Act of 1973. *Id.* Plaintiffs have not brought this case as a class action. *See* Dkt. 1, 9.

On August 3, 2020, Plaintiffs filed their Application for a TRO. Dkt. 28. On August 9, 2020, Defendants filed their Memorandum in Opposition. Dkt. 35. On August 12, 2020, Plaintiffs filed a Reply. Dkt. 40. On August 13, this Court issued a text-only entry denying Plaintiffs' Application for a

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

TRO. Dkt. 47. This Order explains the Court's decision.[2]

### III.     Legal Standard

The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2011).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit employs the "serious questions" test, which states "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "A preliminary injunction is an 'extraordinary and drastic remedy.' It should never be awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (citation omitted). The propriety of a temporary restraining order hinges on a significant threat of irreparable injury, *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999), that must be imminent in nature, *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

---

[2] Since the Court reached a decision on Plaintiffs' Application for a TRO, it has *sua sponte* raised whether Plaintiffs have Article III standing given the limited information before the Court about the reopening plans of counties, school districts, and private schools if the Framework is enjoined. Dkt. 48. The Court has ordered supplemental briefing on this issue. *Id.*

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

**IV.    Analysis**

    **a.  *Application of <u>Jacobson</u>***

In addressing suits seeking injunctive relief against local government action in response to the COVID-19 crisis, district courts, appellate courts, and the Supreme Court have looked to *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). *See, e.g., Prof'l Beauty Fed'n of California v. Newsom*, No. 2:20-CV-04275-RGK-AS, 2020 WL 3056126, at *5 (C.D. Cal. June 8, 2020); *Gish v. Newsom*, No. 2:20-CV-755-JGB-KKX, 2020 WL 1979970, at *4 (C.D. Cal. Apr. 23, 2020); *In re Abbott*, 956 F.3d 696, 704 (5th Cir. 2020); *Elim Romanian Pentecostal Church v. Pritzker*, 2020 WL 3249062, at *5 (7th Cir. June 16, 2020); *S. Bay United Pentecostal Church v Newsom*, 140 S. Ct. 1613 (2020) (Roberts, CJ., concurring in denial of application for injunctive relief).

In *Jacobson*, the Supreme Court considered the constitutionality of a compulsory vaccination law enacted during a smallpox epidemic. 197 U.S. at 12–13. The plaintiff refused to be vaccinated and was fined $5. The Supreme Court rejected his constitutional challenge, reasoning that "the court would usurp the functions of another branch of government if it adjudged, as a matter of law, that the mode adopted under the sanction of the state, to protect the people at large was arbitrary, and not justified by the necessities of the case." *Id.* at 28.

The Court then described the scope of judicial authority to review emergency measures such as the vaccination mandate narrowly, explaining that "[i]f there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can *only* be when ... a statute purporting to have been enacted to protect the public health ... *has no real or substantial relation to those objects*, or is, beyond all question, *a plain, palpable invasion of rights secured by the fundamental law*[.]" *Id.* at 31 (emphasis added). Accordingly, this Court concludes that unless (1) the measure has no real or substantial relation to public health, or (2) the measure is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law," the Court should apply an especially strong presumption of constitutionality to the County's Order. *Id.*; *see also Prof'l Beauty Fed'n,* 2020 WL 3056126, at *5 (applying a similar test under *Jacobson*).

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

The Court finds that California's Framework for K-12 Schools is entitled to a presumption of constitutionality under *Jacobson*. First, the Framework has a "substantial relation" to preventing the spread of COVID-19. CDPH explained that restrictions on in-person learning were imposed as "part of a broader set of recommendations intended to reduce transmission of SARS-CoV-2, the virus that causes COVID-19." Dkt. 36, Ex. J.1. Moreover, Dr. James Watt, CDPH's Chief of the Division of Communicable Diseases, states that the "movement and mixing" associated with reopening schools for in-person instruction "would introduce substantial new risks of transmission of COVID-19." Watt Decl., Dkt. 35-1. Second, as explained below, California's Framework for K-12 Schools does not constitute "a plain, palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. at 31. The Court therefore finds that at this juncture, in the context of the current public health crisis, *Jacobson* requires the Court to apply a presumption of constitutionality to the Framework for K-12 Schools.

    b.  *Application of the <u>Winter</u> Factors*

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Under *Winter*, a plaintiff "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (applying *Winter*, 555 U.S. at 29).

    1.  **Likelihood of Success on the Merits**

The Ninth Circuit considers the likelihood of success on the merits "the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal citations and quotation marks omitted). However, even if likelihood of success is not established, "[a] preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Id.* (quoting *Cottrell*, 632 F.3d at 1134–35).

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

      i.   Substantive Due Process

      Plaintiffs first argue that the Framework for K-12 Education violates a fundamental right to a "basic education" protected by the Due Process Clause of the Fourteenth Amendment. Dkt. 28-1, at 14-16. Plaintiffs acknowledge that the Supreme Court has not recognized such a right, and they do not cite to other cases recognizing such a right or even suggesting that such a right should be recognized. *Id.* Instead, Plaintiffs cite to a single law review article that describes state constitutional requirements to establish public schools at the time the Fourteenth Amendment was ratified, *see* Dkt. 28-1, at 15 (citing Steven G. Calabresi & Michael W. Perl, *Originalism and* Brown v. Board of Ed., 2014 Mich. St. L. Rev. 429), and describe the importance of reading and writing in civic life, *see id.* at 15-16.

      This Court concludes that Plaintiffs are unlikely to succeed on the merits of their substantive due process claim. Several Supreme Court cases addressing Equal Protection Clause challenges to state educational systems have expressly withheld support for the position that there is a constitutionally protected right to public education. *See Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 458 (1988) ("Nor have we accepted the proposition that education is a 'fundamental right' … which would trigger strict scrutiny when government interferes with an individual's access to it."); *Plyler v. Doe*, 457 U.S. 202, 221 (1982) (internal citation omitted) ("Public education is not a 'right' granted to individuals by the Constitution."); *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 37 (1973) ("We have carefully considered each of the arguments supportive of the District Court's finding that education is a fundamental right or liberty and have found those arguments unpersuasive."); *cf. Papasian v. Allain*, 478 U.S. 265, 284 (1986) ("[T]his Court has not yet definitively settled the questions whether a minimally adequate education is a fundamental right.").

      Moreover, even if Plaintiffs' substantive due process argument could be considered with fresh eyes, this Court would have serious doubts about recognizing a basic minimum education as a fundamental right under two settled legal principles. First, previously recognized substantive due process rights generally protect individuals from government action deemed overly intrusive. *See*, *e.g.*, *Lawrence v. Texas*, 539 U.S. 558 (2003) (same-sex sexual relations); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992) (abortion), *Griswold v. Connecticut*, 381 U.S. 479 (1965) (contraception). Substantive due process "refers to certain actions that the government may not engage in" and "[g]enerally speaking … protects an individual's fundamental rights to liberty and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

bodily autonomy." *C.R. v. Eugene School Dist. 4J*, 835 F.3d 1142, 1154 (9th Cir. 2016) (omitting citations and quotation marks). These fundamental individual rights include "the right of parents to be free from state interference with their choice of the educational forum itself." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1207 (9th Cir. 2005). For example, the right to privately educate one's child is constitutionally protected. *See generally Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923). However, "once parents make the choice as to which school their children will attend, their fundamental right to control the education of their children is, at the least, substantially diminished." *Fields*, 427 F.3d at 1206. By contrast to rights against government interference ordinarily associated with substantive due process, Plaintiffs' substantive due process claim would place an affirmative obligation on the government to educate their children—and to educate them in a particular way.

Second, the manner of providing public education is "generally committed to the control of state and local authorities." *Id*. Plaintiffs' proposed constitutional right would at least unsettle "local autonomy" in public education, which the Supreme Court has described as "a vital national tradition." *Missouri v. Jenkins*, 515 U.S. 70, 99 (1995) (citation omitted); *see also Horne v. Flores*, 557 U.S. 433, 448 (2009) (internal citations omitted) (noting that federal courts should exercise restraint in imposing injunctions "involv[ing] areas of core state responsibility, such as public education"). Given that Plaintiffs are arguing that "the right to a basic education is 'deeply rooted in this Nation's history and tradition,'" Dkt. 28-1, at 15, a countervailing tradition of local autonomy raises significant doubts about the viability of Plaintiffs' theory.

In the alternative, Plaintiffs argue that the Supreme Court recognized public education as a "quasi-fundamental" right in *Plyler v. Doe*, 457 U.S. 202 (1982). This Court does not find *Plyler* instructive. In *Plyler*, the Supreme Court held that it violated the Equal Protection Clause to exclude undocumented children from public schools. *Id.* at 230. *Plyler* does recognize that public education is not "merely some governmental 'benefit' indistinguishable from other forms of social welfare legislation." *Id.* at 221. But it does not offer any criteria for assessing the quality of public education that the government has already undertaken to provide. *See id.* at 223 ("[A] State need not justify by compelling necessity every variation in the manner in which education is provided to its population."). Plaintiffs here challenge the quality of the education that they anticipate their children will receive through remote learning. They do not allege that the government has entirely excluded them from public

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

education on a permanent basis. *See generally* Dkt. 9. A temporary period of slowed educational progress poses important concerns, but those concerns are categorically different from the effects of lifetime exclusion. *See Plyler*, 457 U.S. at 223 (describing effects as "deny[ing] [undocumented children] the ability to live within the structure of our civil institutions, and foreclos[ing] any realistic possibility that they will contribute in even the smallest way to the progress of our Nation.").

Therefore, this Court concludes that Plaintiffs are unlikely to succeed on the merits of their substantive due process claim.

      ii. Equal Protection

Plaintiffs next argue that the Framework violates the Equal Protection Clause in two ways: (1) by distinguishing counties on the state monitoring list from those that are not, and (2) by distinguishing K-12 schools from daycares and camps. Since the Court does not recognize a fundamental right to minimum education, Plaintiffs concede that these distinctions are only subject to rational basis review. Dkt. 28-1, at 19; Dkt. 40, at 7 n.4.

"Classifications that do not implicate fundamental rights or a suspect class are permissible so long as they are 'rationally related to a legitimate state interest.'" *United States v. Padilla-Diaz*, 862 F.3d 856, 862 (9th Cir. 2017) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). "Under rational basis review, a classification is valid 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993))). "This inquiry is not a 'license for courts to judge the wisdom, fairness, or logic of legislative choices'; if we find a 'plausible reason[] for [California's] action, our inquiry is at an end." *Fowler Packing Company, Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016) (quoting *Beach Commc'ns*, 508 U.S. at 313-14). Differential treatment may still be upheld under rational basis review even if it is "based on rational speculation unsupported by evidence or empirical data." *United States v. Navarro*, 800 F.3d 1104, 1114 (9th Cir. 2015) (quoting *Beach Commc'ns*, 508 U.S. at 315). "Under rational-basis review, '[t]he burden falls on the party seeking to disprove the rationality of the relationship between the classification and the purpose.'" *Id.* at 1113 (internal citation omitted).

Plaintiffs do not appear to dispute that curbing the spread of COVID-19 is a legitimate state

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

interest. *See* Dkt. 28-1, at 19-20.

      Defendants have put forth plausible reasons for restricting in-person instruction only in counties on the state's monitoring list. CDPH includes counties on its monitoring list based on case rate, testing positivity rate, hospitalizations, and hospital capacity. Dkt. 36, Ex. S.1-2. In counties with higher numbers in these categories, "the risks and impacts of disease transmission are even greater." *Id.*, Ex. H.2. Dr. Watt states in his declaration that "in schools, adults intermingle with children, and transmission may happen between adults, between children, from adults to children or from children to adults." Watt Decl., Dkt. 35-1, at 7. Indoor activities of the sort that typically happen in K-12 schools, such as "speaking, chanting, shouting, and singing in close proximity to others," pose a particularly serious risk of transmission. *Id.* Sustained interactions of the sort that would occur in schools also pose a greater risk of transmission than shorter interactions. *Id.* at 7-8. "In-person classroom instruction thus creates increased public risk of COVID-19 transmission until localities have attained sufficient testing, tracking, hospital capacity, and infection rates that indicate epidemiological stability and an ability to treat outbreaks if they occur." *Id.* This justification easily clears the low bar of rational basis review.

      Defendants have likewise put forth plausible reasons for distinguishing daycares and camps from K-12 schools. Camps involve smaller group sizes and their activities can be conducted outside and with more social distancing than in K-12 schools. *Id.* at 6. Daycares are mandated to have significantly lower adult-to-child ratios than schools typically have. Dkt. 35, at 19-20. This allows for smaller group sizes, and thus reduces the risk of transmission. *Id.*at 20; *see also* Watt Decl., Dkt. 35-1, at 6 ("The risk increases commensurately with the size of the group."). The Court concludes this asserted differential risk is a rational basis for distinguishing between K-12 schools and daycare facilities.

      Plaintiffs have two basic arguments for resisting these conclusions. Both arguments are based on a disagreement with Defendants over the level of risk created by reopening K-12 schools for in-person instruction. Both arguments lack merit.

      First, Plaintiffs suggest that distinguishing among school districts based on public health conditions in the surrounding community is illogical because the risk that children will become ill or transmit the virus is minimal irrespective of geography. Dkt. 28-1, at 19. Assuming this point *arguendo*, Defendants have articulated a rational basis for restricting in-person instruction independent of the risk

                                                                                                     :

Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

of illness to or transmission by children. Transmission could occur among teachers and staff. Watt Decl., Dkt. 35-1, at 5. Spread occurring at school could in turn "fan out into different parts of the state, jeopardizing the hard work to contain COVID-19 that is going on in many communities and placing a further strain on hospitals and other resources across the state." *Id.* at 7-8. Thus, even if it was utterly irrational for Defendants to act on the belief that gatherings of children alone posed a risk of transmitting disease, restrictions on in-person learning in the state's worst-affected counties is rationally related to the distinct goals of protecting teachers, staff, and the broader community.

Second, Plaintiffs offer numerous declarations from physicians and researchers to prove that the risk of COVID-19 transmission among children is negligible. *See*, *e.g.*, Dkt. 28-3 (Declaration of Dr. Jayanta Bhattacharya), 28-4 (Declaration of Dr. Scott Atlas), 28-5 (Declaration of Dr. James-Lyons-Weiler). This assertion does not go unrebutted. Dr. Watt describes instances of severe disease among children, *see* Watt Decl., Dkt. 35-1, at 5, and "limited data suggest[ing] children, particularly older children, may spread COVID-19," *id.* at 7. More fundamentally, the scientific opinions of Plaintiffs' experts have little bearing on the question before this Court. The Equal Protection Clause simply does not require that government classifications be supported by scientific consensus – or even the most reliable scientific evidence. "[R]ational-basis review allows for decisions 'based on rational speculation unsupported by evidence or empirical data.'" *Navarro*, 800 F.3d at 1114 (quoting *Beach Commc'ns*, 508 U.S. at 315). Plaintiffs here have not met their "burden to negative every conceivable basis which might support" the Framework. *Id.* (internal citation and quotation marks omitted).

The Court therefore concludes that Plaintiffs are unlikely to succeed on the merits of their Equal Protection claim.

### iii. Title VI of the Civil Rights Act of 1964

Plaintiffs concede in their Reply brief that their Title VI claim "is currently foreclosed" by adverse precedent. Dkt. 40, at 9. Therefore, this Court has no difficulty concluding that Plaintiffs are unlikely to succeed on the merits of their Title VI claim.

:

Initials of Preparer     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

      iv. <u>IDEA</u>

Four of the Plaintiffs are parents of children with disabilities, and the minor Plaintiff, Z.R., also has disabilities. Dkt. 9. They assert that the Framework's restriction on in-person learning violates their rights under the IDEA.

The IDEA provides federal funds to states in exchange for "furnish[ing] a 'free appropriate public education' – more concisely known as a FAPE – to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017). The IDEA's mechanism for providing disabled children with a FAPE is an "individualized education program" ("IEP"), which is "[c]rafted by … a group of school officials, teachers, and parents … to meet all of the child's 'educational needs.'" *Id.* at 749 (internal citations omitted).

Defendants argue that Plaintiffs' IDEA claim must fail because they have not exhausted their administrative remedies as required by 20 U.S.C. § 1415(i)(2)(A), §1415(l). Dkt. 35, at 22. Plaintiffs do not allege that they have exhausted administrative remedies. *See generally id.*; Dkt. 40, at 9-10. Instead, Plaintiffs argue that they fall within an exception to the IDEA exhaustion requirement. In *Hoeft v. Tucson Unified Sch. Dist.*, 867 F.2d 1298 (9th Cir. 1992), the 9th Circuit held that exhaustion under the IDEA was not required where "(1) it would be futile to use the due process procedures…; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)." 867 F.2d at 1303. "The party alleging futility or inadequacy of IDEA procedures bears the burden of proof." *Doe v. Arizona Dept. of Educ.*, 111 F.3d 678, 681 (9th Cir. 1997) (citing *Hoeft*, 867 F.2d at 1303).

"In determining whether these exceptions apply, our inquiry is whether pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme." *Hoeft*, 967 F.2d at 1302-03. "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete

                                                                                                                                    :

Initials of Preparer       PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Id.* at 1303.

The parties' briefing on exceptions to the exhaustion requirement is limited to one footnote in Defendants' Opposition, Dkt. 35, at 22 n.10, and a paragraph in Plaintiffs' Reply, Dkt. 40, at 10. The Court has accordingly ordered the parties to provide supplemental briefing. Dkt. 48. However, the Court has determined at this stage that Plaintiffs' failure to exhaust is unlikely to be excused.

The Court does not find that exhaustion would be futile or inadequate. Plaintiffs argue that exhaustion is not required because the Department of Education "has no authority to override the Governor's Order." Dkt. 40, at 10. That argument appears inconsistent with 9th Circuit precedent. In *Paul G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096 (9th Cir. 2019), a California student wanted a residential placement in California even though California had no qualifying facility. 933 F.3d at 1098-99. The plaintiff pursued an administrative process against both the state and his school district. *Id.* The hearing officer dismissed the state, concluding that the state could not be ordered to build a new facility. *Id.* Plaintiff then settled with the school district. *Id.* The 9th Circuit held that the plaintiff's failure to exhaust was not excused even though the hearing officer could not award him the particular relief he wanted – in-state residential placement – because "he ha[d] no IEP that requires … in-state placement." *Id.* at 1100, 1102. Similarly, Plaintiffs here should not be excused from obtaining through the administrative process an IEP that specifies in-person learning is required under the circumstances just because a hearing officer lacks the authority to enjoin the Framework for K-12 Schools. *See also Doe*, 111 F.3d at 683 (holding even in the context of a class action that it was "not decisive" that "the class might not get class-based or injunctive relief").

Plaintiffs are unlikely to succeed in arguing that they are entitled to an exception because the violations they seek to remedy are systemic. Dkt. 40, at 10. Exhaustion cannot be evaded just by "[l]abeling the Department's failure … to meet its responsibilities to all children with special education needs 'systemic.'" *Doe*, 111 F.3d at 683. Rather, Plaintiffs must show that the alleged violation "implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act." *Id.* at 682. A plaintiff alleging a systemic violation is not entitled to an exception if "it involves only a substantive

:

Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Id.* The Court notes that Plaintiffs have not filed a class action, and thus can only properly seek a FAPE for their individual children. The Court is not satisfied at this stage that the administrative process is incapable of identifying feasible solutions in light of a particular child's needs. *See id.* at 683 (rejecting argument that systemwide nature of relief sought excused exhaustion where "a district court might have to resolve a number of factual issues within the [agency's] expertise").

    The Court also finds at this stage that Plaintiffs are unlikely to be entitled to the exception for policies or practices of general applicability that are contrary to law. While the Framework is undoubtedly a policy of general applicability, this exception applies to challenges to the facial validity of a policy. *See Hoeft*, 967 F.2d at 1305 (explaining that this exception applies "when only questions of law are involved in determining the validity of a policy"); *Christopher S. v. Stanislaus County Office of Educ.*, 384 F.3d 1205, 1213 (9th Cir. 2004) (excusing exhaustion under this exception where "the validity of a policy is purely a matter of law"). Here, numerous factual questions—including detailed analysis of a child's particular impairments and ability to interact with technology—are required to determine whether Plaintiffs' children and Z.R. can receive a FAPE remotely. The Court thus doubts at this stage that Plaintiffs are entitled to the exception for policies or practices of general applicability.

    The Court has considered the "general purposes of exhaustion." *Hoeft*, 967 F.2d at 1302-03. IDEA's exhaustion requirement embodies a policy choice that favors "full exploration of technical educational issues" and "further[] development of a complete factual record" by the agency before federal courts should intervene. *Hoeft*, 967 F.2d at 1303; *see also Paul G.*, 933 F.3d at 1102 ("A principal purpose of requiring administrative exhaustion … is to ensure the agency has had an opportunity to rule on a claim before a plaintiff goes to court."). Here, Plaintiffs' declarations leave the Court without the factual details or case-specific expert analysis necessary to adjudicate Plaintiffs' IDEA claims. Moreover, this Court is hopeful that decisionmakers with subject-matter expertise would be in a better position than this Court to evaluate the challenges of online learning and the specific needs of Plaintiffs' children and Z.R. The general purposes of exhaustion thus weigh against excusing Plaintiffs' failure to exhaust.

                                                                                                                                                                   :

Initials of Preparer        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

At this stage, the Court finds that Plaintiffs are unlikely to be excused from satisfying the IDEA exhaustion requirement. Therefore, the Court concludes that Plaintiffs are unlikely to succeed on the merits of their IDEA claim.

   v. <u>ADA/Rehabilitation Act</u>

The Court's conclusion that failure to exhaust will likely defeat Plaintiffs' IDEA claims also makes it likely that failure to exhaust will defeat Plaintiffs' ADA and Rehabilitation Act claims. Under 20 U.S.C. § 1415(l), "before the filing of a civil action under [the ADA and Rehabilitation Act] seeking relief that is also available [under the IDEA], the procedures [applicable to IDEA claims] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." Whether the ADA and Rehabilitation Act claims here are exhausted depends on whether the gravamen of Plaintiffs' complaint seeks relief for denial of a FAPE. *See Fry*, 137 S. Ct. at 752; *Paul G.*, 933 F.3d at 1100 ("The crucial issue is therefore whether the relief sought would be available under the IDEA.").

Plaintiffs' ADA and Rehabilitation Act claims seek relief for denial of a FAPE. Plaintiffs could not have brought the same claim if Defendants' alleged conduct occurred at a public facility that was *not* a school because Plaintiffs essentially allege that the Framework prevents schools from providing the services necessary for an adequate education. Such a claim would make no sense with respect to a public theater or library because those facilities do not provide education. Moreover, an adult employee or visitor could not assert such a claim against the school because they are not owed an education. "[W]hen the answer [to those questions] is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so." *Fry*, 137 S. Ct. at 756.

Plaintiffs argue that their ADA and Rehabilitation Act claims are not subject to IDEA exhaustion because they allege discrimination on the basis of disability. Dkt 40, at 10. "Section 1415(l)," however, "is not merely a pleading hurdle." *Id.* at 755. The gravamen of the complaint is what counts. *Id.* at 752.

Therefore, the Court concludes that Plaintiffs are unlikely to succeed on the merits of their ADA and Rehabilitation Act claims.[3]

---

[3] It is unnecessary to address the parties' disagreement about whether these claims can be brought under 42 U.S.C. § 1983.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

**2. Likelihood of Irreparable Harm**

"A preliminary injunction may issue only upon a showing that 'irreparable injury is *likely* in the absence of an injunction.'" *VidAngel*, 869 F.3d at 865 (quoting *Winter*, 555 U.S. at 22). The Court recognizes the impact that the Framework for K-12 Education will have on Plaintiffs' children and Z.R. However, the Court is not convinced at this stage that Plaintiffs have met their burden to show that irreparable harm will likely result if an injunction is denied. *See Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires *plaintiffs* to demonstrate that irreparable injury is likely in the absence of an injunction.") (italics added).

Plaintiffs have not shown that it is likely that schools will be closed for in-person learning for long enough to cause irreparable damage. Plaintiffs have not directed this Court to evidence in the record demonstrating that the public health situation in counties on the monitoring list is unlikely to improve soon enough to allow for in-person learning under the Framework before learning losses become irreparable. *See generally* Dkt. 28-1, at 24 (addressing likelihood of irreparable harm); Dkt. 40, at 10-11 (same). Likewise, Plaintiffs have not addressed the likelihood that elementary school children will be able to attend school in-person very soon under the waiver process provided by the Framework. *Id.*; *see also* Dkt. 36, Ex. J.1 n.2.

Plaintiffs have brought this case as individuals rather than as representatives of a class of parents statewide. *See generally* Dkt. 9. That limits the ability of Plaintiffs to claim harms that may be suffered by other parents' children as their own. Considering this case concerns individual children, Plaintiffs' failure to provide expert assessments of the effects of remote education on their own children—as opposed to generalized predictions—stands as a serious deficiency in their proof. *See*, *e.g.*, Hamilton Decl., Dkt. 28-9 ("socialization is a critical part of a child's education" and "[m]any are bored by spending hours in front of a screen"); McDonald Decl., Dkt. 28-8 (relating anecdotal reports such as "see[ing] a substantial increase in illness among existing pediatric patients in my clinical practice, all of whom have been confined at home for over three months"). Moreover, Plaintiffs strongly emphasize harms such as "abuse, depression, and hunger." Dkt. 28-1, at 24. Plaintiffs' experts, however, have not examined Plaintiffs' children and found them likely to suffer from these harms. *See generally* Dkt. 28.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

The Court notes that Plaintiffs do not seriously engage with the steps Defendants have taken to mitigate the effects of its restrictions on in-person instruction. *See* Dkt. 40, at 11 (dismissing some state mitigation plans as "throw[ing] money at the problem"). For example, Defendants have provided exhibits describing newly enacted California laws addressing the impact of distance learning on IDEA compliance and new education appropriations targeted to mitigating learning loss. *See* Dkt. 36, Ex. II-JJ. In the absence of evidence or argument that these measures will be ineffective, the Court considers them to weigh against a finding that Plaintiffs are likely to suffer irreparable harm.

Finally, while Plaintiffs argue that deprivation of constitutional rights itself constitutes irreparable harm, the Court has concluded they are unlikely to be able to establish a violation of any constitutional right. *See supra* Part IV.b.1.i.-ii. Thus, any such presumption is inapplicable to this case.

The Court is not satisfied that Plaintiffs have met their burden to show a likelihood of irreparable harm at this stage of the proceedings.

### 3. Balance of the Equities/Public Interest

"Finally, the court must 'pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *VidAngel*, 869 F.3d at 867 (citing *Winter*, 555 U.S. at 24). "When the government is a party, the [balance of equities and public interest] factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (internal citation omitted).

The Court concludes that the public interest weighs against granting a TRO. Plaintiffs are only 14 parents and one child in a state of 40 million residents. The decision to reopen schools affects countless others, including teachers and staff, as well as all who could conceivably suffer serious illness or death as a result of a school-based outbreak. Moreover, the evidence in the record does not clearly establish how long remote learning should be expected to last and how much time would have to pass before educational and developmental losses become irreversible—if at all.

On the other side, Defendants have developed their Framework for K-12 Education as part of a comprehensive strategy to address an ongoing public health emergency. *See generally* Watt Decl., Dkt. 35-1. As the Supreme Court recently reaffirmed, the state's "latitude" to address this severe public health crisis "must be especially broad." *S. Bay United Pentecostal Church*, 140 S. Ct. at 1613 (internal

: 
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-06472-SVW-AFM | Date | 8/21/2020 |
|---|---|---|---|
| Title | *Matthew Brach et al. v. Gavin Newsom et al.* | | |

citation and quotation marks omitted); *see also id.* ("Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'") (quoting *Jacobson v. Massachusetts*, 197 U.S. at 38). Defendants' restrictions on in-person learning are designed to be temporary and limited to regions where COVID-19 poses the greatest risks.

At this stage in the proceedings, the uncertainties surrounding the course of the virus—and the duration and quality of remote learning—are too great to conclude that the public interest favors upending the state's plan to address this ongoing public health crisis. Accordingly, the balance of equities and public interest factors do not favor granting a TRO.

### c. Balancing the *Winter* Factors

Considering the *Winter* factors together, the Court finds that a TRO is not warranted. Plaintiffs failed to show a likelihood of success on their constitutional and statutory claims. Plaintiffs likewise failed to meet their burden to show a likelihood of irreparable harm. Finally, the balance of equities and public interest do not favor a TRO. On balance, the Court thus concludes that the *Winter* factors weigh against granting a TRO.

### V. Conclusion

For the reasons articulated above, the Court DENIES Plaintiffs' Application for a Temporary Restraining Order.

|  | : |
|---|---|
| Initials of Preparer | PMC |